HOOD, Judge.
Wilson Guillory, Jr., instituted this action for damages for the death of his minor son, Randy Guillory, who was killed when struck by an automobile owned by Richard D. Miller and being driven by Charles L. Ashby. The defendants are Ashby, State Farm Mutual Automobile Insurance Company and Continental Insurance Company. State Farm is the liability insurer of Miller, and Continental is the insurer of Ashby. The trial court rendered judgment for defendants, and plaintiff appealed. We affirm.
The principal issue presented is whether defendant Ashby was negligent.
The accident occurred about 11:30 A.M. on May 25, 1973, on U. S. Highway 190, in Jefferson Davis Parish. Ashby was driving Miller’s Toyota automobile east on that highway at a speed of about 60 miles per hour. Plaintiff’s six year old son, Randy, attempted to walk or run across the highway, from the north to the south side of it, followed by two companions who were about the same age. Ashby tried to avoid an accident, but dispite his efforts his car struck Randy when the latter reached a point near the south edge of the hard surfaced portion of the highway. The child was killed almost instantly as a result of that accident.
The highway at that point is a two-lane, paved, heavily traveled thoroughfare, the hard surfaced slab being 24 feet wide, with shoulders about 10 feet wide on each side of it. Ditches from five to seven feet deep ran along each side of the road bed. The accident occurred in a rural area, with only a few scattered houses in that vicinity, and there were a number of trees in and along the ditches on both sides of the highway. The road was straight and level, the weather was clear, the road surface was dry, and visibility was good. The speed limit on the highway in that area was 65 miles per hour.
Asby testified that as he was driving east on the highway he saw a child (Randy) come out of the ditch on the north side of the highway onto the north shoulder, followed by two other children who were about the same age. Ashby let up on the accelerator of his car immediately. Randy stopped momentarily on the side of the road, and then he proceeded to cross the hard surfaced part of the highway, directly in front of defendant’s car. Asby stated that he blew his horn, applied his brakes forcefully and turned to his right in an effort to avoid an accident, but despite his efforts the left front part of his car struck Randy when the latter reached a point near the south edge of the hard surfaced part of the highway. He does not remember whether the other children followed Randy across the pavement, but he said that the decedent crossed the road at a “fast walk” or a “slow run.” After he struck the child his car continued in a southeasterly direction striking a mailbox on the south side of the highway, running into the south ditch and overturning before it came to rest.
The only other eye witness to the accident was Albert Guillory, who was driving his truck east on the same highway, about 400 or 500 feet behind Ashby’s car. Guil-lory testified that he saw Ashby suddenly veer off to the right side of the highway, making a cloud of dust, and that he then saw two children on the highway in that *597 immediate area running toward the north shoulder of the road. He stated that when he first saw these children, after Ashby-had veered to his right, they were on the pavement, three or four feet from the north edge of it, and they were running north. He saw no other children on or along the highway at any time before Ash-by suddenly turned onto the right shoulder of the road.
The investigating officer found skid marks and scuff marks on the ■ highway which indicated the point of impact and showed that the car was traveling southeasterly and was largely on the south shoulder of the road when the accident occurred. Marks on the automobile showed that the left front headlight area of the car had struck the child. The officer determined that the front wheels of the Ashby car skidded from 67 to 69 feet, and that the rear wheels skidded from 42 to 43 feet, before the child was struck. After the impact, the car continued to travel southeasterly into the south ditch, striking a mailbox, turning over and finally coming to rest in an upright position at a point 126 feet southeast of the place where the child was struck. The body of the child came to rest 97 feet southeast of the point of impact.
The trial judge found that Ashby was keeping a proper lookout, that he was driving at a reasonable rate of speed, and that he reacted immediately and positively in an effort to avoid an accident when the first child, Randy, appeared on the highway. He concluded that Ashby was not negligent, and that the accident was unavoidable.
Plaintiff contends that the trial judge erred in several respects. His principal argument is that Ashby was negligent in failing to take proper steps to bring his car under control when he first observed small children playing near the highway. He contends that Ashby knew or should have known that small children lived in that area and might be on or near the highway. Considering the speed at which Ashby was driving, the length of the skid marks left by his car, the time within which he should have reacted to the danger and the time it took the child to walk or run across the road, plaintiff reasons that Ashby did not apply his brakes or take reasonable steps to bring his car under control when he first observed or should have observed the presence of young children on or near the highway. According to his computations, it required at least five seconds for young Randy to cross from the north shoulder to the point of impact, assuming that he traveled at a speed of seven feet per second. He argues that Ashby traveled over 300 feet during that time, and that he obviously could have brought his car under control and avoided an accident if he had made a reasonable attempt to do so after he should have become aware of the danger.
The law is settled that when a motorist sees a young child along the highway, he must endeavor to bring his car under such control that an accident will be avoided, regardless of any unexpected or expected action on the part of the child. Tate v. Hill, 197 So.2d 107 (La.App. 1 Cir. 1967). In Ates v. State Farm Mutual Automobile Insurance Co., 191 So.2d 332 (La.App. 3 Cir. 1966), the court said:
“The jurisprudence of this state places the highest duty of care upon persons operating automobiles on the public streets and highways in the vicinity of small children. . . . This burden is not discharged by merely blowing a horn and warning or reducing one’s speed below the maximum limit. A motorist encountering children upon the roadside must anticipate that the very young are possessed of but limited judgment and that their actions are likely to be sudden, unpredictable and often foolish.”
A motorist, however, is not the insurer of the safety of children playing near the street. If he is proceeding at a lawful and reasonable speed and is obeying the rules of the road, he ordinarily will not be held liable for injury to a child who *598 suddenly darts into the path of his automobile from a concealed position in such a manner that the motorist is unable to avoid striking him. Schuster v. Audubon Insurance Co., 147 So.2d 226 (La.App. 4 Cir. 1962); Layfield v. Bourgeois, 142 So.2d 799 (La.App. 3 Cir. 1962).
In Wooten v. Wimberly, 233 So.2d 682 (La.App. 3 Cir. 1970), we held that:
“When a motorist has employed all reasonable precautions to avoid an accident and the sudden act of a child creates an emergency rendering it impossible for the motorist to avoid striking the child, the accident is deemed unavoidable and the motorist is exonerated from liability.”
Applying these rules to the facts in the instant suit, we have concluded that the trial court did not err in finding that the defendant driver was free from negligence. We are convinced that Ashby was confronted with a sudden emergency which he neither caused nor contributed to, and that he acted promptly and reasonably under the circumstances in trying to avoid an accident.
In comparing the time it took the child to cross the road with the time it should have taken Ashby to react and to stop his car, plaintiff has failed to consider the fact that Ashby had decelerated to some extent before his wheels began to skid, and that his car continued to decelerate rapidly while it was skidding on the highway. There is some uncertainty, therefore, as to the average speed the car traveled after Ashby saw the child emerge from the ditch up to the time he applied his brakes forcefully, and how much time elapsed while he was trying to stop his car. The distance the car traveled after the impact is ’relevant, of course, but it does not establish with any degree of certainty the speed at which the defendant’s car was traveling, because after the accident Ashby’s car traveled largely down hill, into the ditch, and there is no showing that the driver continued to apply the brakes after the child was struck.
We, like the trial judge, are unable to compute with mathematical precision the time or the distance which Ashby had or should have had within which to bring his car to a stop. The evidence, considered as a whole, convinces us that he was maintaining a proper lookout, that he was driving at a reasonable speed, that he was confronted with an emergency, and that he acted promptly and reasonably in an effort to avoid an accident.
The evidence does not support plaintiff’s argument that Ashby saw or could have seen the children playing in the ditch before young Randy appeared on the north shoulder of the road. It is unnecessary for us to consider the argument that Ashby had the last clear chance to avoid the accident, because the six year old child was incapable of contributory negligence.
We find no merit to plaintiff’s argument that Ashby should have turned to his left, instead of to his right, and thus avoided the accident. It is true that there were no other vehicles on the highway at that time which would have prevented Ashby from making such a maneuver. The testimony of Albert Guillory indicates, however, that the other two children had followed Randy onto the pavement, and their lives thus would have been endangered if Ashby had turned to his left. Regardless of what the other children did, however, we think Ash-by acted reasonable under the circumstances, and we will not hold him accountable for failing to take a course of action which now may appear to have been better in such an emergency.
Our conclusion is that the judgment of the trial court is correct and should be affirmed.
For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this proceeding are assessed to plaintiff-appellant.
Affirmed.